IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| R. MITCHELL BUSH and R. M. BUSH & COMPANY d/b/a THE BUSH AGENCY, | |
| Plaintiffs, | CIVIL ACTION NO.: 4:20-cv-219 |
| v. | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

**O R D E R**

This matter is before the Court on Defendant Nationwide Mutual Insurance Company's Motion to Compel Arbitration and Dismiss the Complaint. (Doc. 16.) According to the Complaint, Nationwide Mutual Insurance Company ("Nationwide") entered into an agreement with Plaintiffs R. Mitchell Bush and R. M. Bush & Company d/b/a The Bush Agency (as well as other Georgia insurance agents) which allegedly dealt with the transfer of certain "policy assets." (Doc. 1.) Plaintiffs filed this putative class action suit against Nationwide seeking a judgment declaring this agreement to be void and unenforceable, an injunction against Nationwide prohibiting them from enforcing this agreement, and, finally, equitable rescission of the agreement. (Id.) Nationwide then filed the at-issue Motion to Compel Arbitration and Dismiss the Complaint. (Doc. 16.) The Motion has now been fully briefed. (Doc. 18; doc. 22.) For the reasons explained more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Compel Arbitration and Dismiss the Complaint. (Doc. 16.)

**BACKGROUND**

According to the Complaint, Bush is the principal and owner of R. M. Bush & Company d/b/a The Bush Agency (the "Company") and has been an insurance agent representing Nationwide for 27 years. (Doc. 1, p. 5.) For many years, the Company operated "under an exclusive Nationwide contract." (Id.) The Complaint alleges that, under this exclusive contract, the Company agreed to place its clients who were eligible for Nationwide insurance products exclusively with Nationwide in exchange for "major deferred compensation." (Id. at p. 1.) In contrast, under an independent contract, an agent is "free to represent multiple insurers and to place their clients who are eligible for Nationwide insurance products with Nationwide or with other carriers." (Id. at p. 2.) In 2018, Nationwide announced that it intended to end all of its exclusive agent contracts and replace them with independent contracts by July 1, 2020. (Id.)

In May 2020, Bush, as the agent of the Company, signed several agreements with Nationwide. (See generally doc. 1-2; doc. 1-4.) One of these agreements was called the "Independent Contractor Agent Agreement" ("IC Agreement") which established that the Company would begin operating under an independent Nationwide contract on July 1, 2020. (Doc. 1, p. 5; doc. 1-2.) The IC Agreement contained an arbitration provision which states that "[a]ny claim or dispute between Agent and Company, will be adjudicated on an individual agent-by-agent basis, and not on a class or representative basis. The adjudication will be by mandatory binding arbitration under the American Arbitration Association Commercial Arbitration Rules and Mediation Procedures in effect on the date of the filing for arbitration." (Doc. 1-2, p. 8.) In addition, the provision states that it

> does not limit either Party's right to pursue equitable remedies for a temporary restraining order or preliminary or permanent injunctive relief from a court of competent jurisdiction before, after, or during the pendency of any arbitration proceeding, including in aid of arbitration. The exercise of any such remedy does

>not waive either Party's agreement to arbitrate. The Parties intend that any dispute in any way relating to the Parties' contractual and business relationship must be pursued through arbitration such that there should be no disputes suitable for filing in a court of competent jurisdiction except as to the pursuit of equitable remedies described in this paragraph.

(<u>Id.</u> at p. 9.) Finally, the arbitration provision also provides that "[t]he enforceability of this Agreement, including this arbitration clause, will be resolved by the arbitrator." (<u>Id.</u>)

The parties also executed an "Asset Transfer Agreement." (<u>See</u> doc. 1-4.) Under this agreement, Nationwide agreed to transfer its "right, title, and interest in, to, in connection with, and under [certain specified] assets, properties, and contractual rights" which included, among other things, the "Renewal Rights and Customer Data related to Policies written by Nationwide . . . and being serviced by [the Company] and existing as of [July 1, 2020]." (<u>Id.</u> at pp. 3, 25.) The Asset Transfer Agreement also contained a "Submission to Jurisdiction" provision stating that "[e]ach Party irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or for recognition and enforcement of any judgment in respect hereof brought by the other Party or Parties . . . must be brought and determined exclusively in any Ohio state or federal court sitting in Columbus, Ohio." (<u>Id.</u> at p. 21.)

In their Complaint, Plaintiffs contend that the Asset Transfer Agreement "was obtained under duress with no valid consideration in pursuit of a scheme to allow Nationwide to obtain an unlawful or improper tax benefit." (Doc. 1, p. 2.) Specifically, Plaintiffs claim that "[t]he 'policy asset' that Nationwide is purporting to transfer . . . is not a separate asset and is not owned by Nationwide" but is instead "the defining feature of an independent contract, a right which all independent agents, including The Bush Agency and the proposed class, automatically have

3

without the need for any separate purchase from the insurer."[1]  (Id. at p. 3.)  The Complaint also alleges that Nationwide coerced Bush into signing the Asset Transfer Agreement by "threaten[ing] to take his clients (by unspecified means) and confiscate the remainder of his deferred compensation package."  (Id. at p. 13.)  Bush signed the Asset Transfer Agreement on May 28, 2020 but indicated that he was signing "UNDER DURESS."  (Doc. 1, p. 13; doc. 1-5, p. 2.)

Plaintiffs filed their Complaint on September 14, 2020, seeking a declaratory judgment stating that the Asset Transfer Agreement is void and unenforceable, an injunction prohibiting Nationwide from enforcing the Asset Transfer Agreement, and equitable rescission of the Asset Transfer Agreement.  (Doc. 1, p. 18.)  Nationwide then filed its Motion to Compel Arbitration and Dismiss the Complaint.  (Doc. 16.)  Plaintiffs filed a Response, (doc. 18), and Nationwide filed a Reply, (doc. 22).

## LEGAL STANDARD

District courts in this circuit have regularly held that "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)."  Mullinax v. United Mktg. Grp., LLC, No. 1:10-cv-03585-JEC, 2011 WL 4085933, at *8 (N.D. Ga. Sept. 13, 2011) (citing Bell v. Atl. Trucking Co., Inc., No. 3:09-cv-406-J-32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009), aff'd, 405 F. App'x 370 (11th Cir. 2010)).  Motions pursuant to Rule 12(b)(1) take one of two forms: a "facial attack" on subject matter jurisdiction based on the complaint's allegations taken as true or a "factual attack" based on evidentiary matters outside of the pleadings.  McElmurray v. Consol. Gov't of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007) (citing Lawrence v. Dunbar, 919

---

[1] The Complaint alternatively asserts that "to the extent that the 'policy asset' in question might be deemed to have at least some value, the non-negotiable value that Nationwide has assigned is inflated for many or most agents."  (Doc. 1, p. 3.)

4

F.2d 1525, 1529 (11th Cir. 1990)).  In the "factual attack" context, the court considers whether subject matter jurisdiction tangibly exists in fact, irrespective of the complaint's allegations.  Id. When faced with such a challenge to subject matter jurisdiction, a plaintiff has the burden to prove facts which show jurisdiction exists over its claims.  OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (citations omitted).

To resolve a factual attack, a court "may consider extrinsic evidence such as testimony and affidavits," rather than being constrained to the allegations in the complaint.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Courts are "free to weigh the facts," subject to clearly erroneous review, without viewing them in the light most favorable to the plaintiffs. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009).  In deciding a fact-based motion to dismiss for lack of subject matter jurisdiction, a court may dismiss on the basis of (1) "the complaint supplemented by undisputed facts evidenced in the record" or (2) "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).[2]  And while plaintiffs are entitled to a reasonable opportunity for discovery and a hearing on this issue, courts are empowered to decide factual motions on affidavits alone, where appropriate, so long as those factual determinations are identified and explained.  See id. at 413–14 (citations omitted); see also Fed. R. Civ. P. 43(c) ("[T]he court may hear [a motion] on affidavits or may hear it wholly or partly on oral testimony or on depositions.").  Furthermore, courts are to "use their judicial experience and common sense

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

in determining whether" a case meets federal jurisdictional requirements. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 & n.5 (11th Cir. 2010).

## DISCUSSION

In its Motion, Nationwide argues that the Court should compel arbitration and dismiss Plaintiffs' Complaint.[3] (Doc. 16.) Specifically, Nationwide asserts that the IC Agreement contains a valid arbitration provision which, it argues, requires that this dispute be handled through arbitration. (Id. at p. 14–16.) In Response, Plaintiffs argue that their claims are based on the Asset Transfer Agreement, so the arbitration provision in the IC Agreement does not govern the dispute. (Doc. 18, pp. 13–14.) Plaintiffs also argue that even if the arbitration provision is generally applicable, their injunction claim falls outside of that provision's terms. (Id. at pp. 14–15.) The Court will examine Plaintiffs' arguments in turn.

### I.     The IC Agreement's Arbitration Provision Applies to Plaintiffs' Claims

Plaintiffs assert that the arbitration provision in the IC Agreement does not apply to their claims because they are brought pursuant to the Asset Transfer Agreement. (Id. at pp. 13–14.) As an initial matter, both the IC Agreement and the Asset Transfer Agreement provide that Ohio law governs the interpretation of each of those agreements.[4] (Doc. 1-2, p. 9; doc. 1-4, p. 33.) "When considering a choice of law question, a federal court sitting in diversity is to apply the choice of law rules of the forum state, here Georgia." Mullins v. M.G.D. Graphics Sys. Grp., 867 F. Supp. 1578, 1580 (N.D. Ga. 1994). In Georgia, "[a]bsent a contrary public policy, [a] court will normally enforce a contractual choice of law clause." Carr v. Kupfer, 296 S.E.2d 560, 562 (Ga. 1982).

---

[3] Nationwide argues in the alternative that "the Court should transfer this case to the Southern District of Ohio in accordance with multiple forum selection clauses that require litigation be brought in Columbus, Ohio." (Doc. 16, p. 16.) Because the Court finds that this case should be sent to arbitration, it does not reach this issue.

[4] The IC Agreement provides that it is also governed by the Federal Arbitration Act. (Doc. 1-2, p. 9.)

Neither party has argued that the choice of law provisions are against public policy, so Ohio law applies.

Under Ohio law, "[a] contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." Cadle v. D'Amico, 66 N.E.3d 1184, 1188 (Ohio Ct. App. 2016). Ohio law also favors arbitration; the Supreme Court of Ohio has specifically stated that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Acad. of Med. of Cincinnati v. Aetna Health, Inc., 842 N.E.2d 488, 492 (Ohio 2006) (alteration in original) (quoting Council of Smaller Enters. v. Gates, McDonald & Co., 687 N.E.2d 1352, 1356 (Ohio 1998)).

The arbitration provision in the IC Agreement states that "[a]ny claim or dispute between Agent and Company, will be adjudicated on an individual agent-by-agent basis, and not on a class or representative basis. The adjudication will be by mandatory binding arbitration . . . ." (Doc. 1-2, p. 8.) The provision goes on to explain that "[t]he Parties intend that *any dispute in any way relating to the Parties' contractual and business relationship* must be pursued through arbitration . . . ." (Id. at p. 9 (emphasis added).) Nothing in the provision limits its scope only to claims or disputes arising out of or relating to the terms of the IC Agreement. Instead, the plain language of the arbitration provision indicates that it extends not only generally to Plaintiffs and Nationwide's "contractual relationship," but also beyond that, to disputes that relate in any way to their entire "business relationship." Any other interpretation would, in effect, render the "business relationship" language meaningless in violation of Ohio law. See Wohl v. Swinney, 888 N.E.2d 1062, 1066 (Ohio 2008) ("When interpreting a contract, we will presume that words are used for

a specific purpose and will avoid interpretations that render portions meaningless or unnecessary."). In addition, nothing in the arbitration provision's language indicates an intent to exclude claims arising out of or under the Asset Transfer Agreement, which Mr. Bush executed less than five minutes before he executed the IC Agreement. (Doc. 1-2, p. 10; doc. 1-4, p. 23.) Indeed, the word "any" is used to describe "dispute" or "claim" several times in the arbitration provision, and this modifier indicates that it is meant to apply broadly. See Merriam-Webster's Third New International Dictionary Unabridged, http://unabridged.merriam-webster.com (accessed July 19, 2021) (defining "any" to mean "one indifferently out of more than two: one or some indiscriminately of whatever kind"). Thus, while the Asset Transfer Agreement does not contain its own provision explicitly requiring arbitration, the language used in the IC Agreement's arbitration provision is sufficiently broad that the Court cannot say "with positive assurance that [it] is not susceptible of an interpretation that covers" Plaintiffs' claims relating to the Asset Transfer Agreement. Acad. of Med. of Cincinnati, 842 N.E.2d at 492.

In support of their argument against arbitration, Plaintiffs point to a provision in the Asset Transfer Agreement titled "Submission to Jurisdiction," which states that "[e]ach Party irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or for recognition and enforcement of any judgment in respect hereof brought by the other Party or Parties . . . must be brought and determined exclusively in any Ohio state or federal court sitting in Columbus, Ohio." (Doc. 1-4, p. 21.)  They argue that this provision is incompatible with the arbitration provision in the IC Agreement, so the arbitration provision does not apply to claims based on the Asset Transfer Agreement (and thus does not apply to their claims here). (Doc. 18, pp. 13–14.)  The Court does not find this argument persuasive.

In Cook v. Community Health Partners, the Court of Appeals of Ohio faced a similar question when one of the parties argued that the at-issue arbitration clause was "ambiguous and unenforceable because the relevant contract contain[ed] both a forum selection clause and a broad arbitration clause." Cook v. Cmty. Health Partners, No. 13CA010520, 2015 WL 1291514, at *1 (Ohio Ct. App. Mar. 23, 2015). The Ohio court ultimately rejected this argument, finding that "[t]he arbitration clause and forum selection clause do not conflict because arbitration and litigation are not mutually exclusive," and it proceeded to list several examples of how a claim could end up in court even where there is a valid arbitration clause. Id. at p. *3. In arriving at this decision, the Ohio court relied upon decisions from other states that had also found that forum selection clauses and arbitration clauses are not inherently inconsistent. See id. (citing Higman Marine Servs., Inc. v. BP Amoco Chem. Co., 114 F. Supp. 2d 593, 596–97 (S.D. Tex. 2000); ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc., 487 F. Supp. 2d 980, 988–89 (N.D. Ill. 2007)). The Court's own research shows that this is the consensus approach across jurisdictions. See, e.g., Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC, 645 F.3d 522, 525 (2d Cir. 2011) ("[T]he forum selection clause would operate to provide New York courts with . . . jurisdiction over ancillary proceedings—such as to enforce an arbitral award or to challenge the validity of the arbitration agreement—but the merits of any dispute would be resolved in the first instance by arbitration."); Branch v. Mays, 265 F. Supp. 3d 801, 805 (E.D. Tenn. 2017) ("Indeed, the weight of authority holds just the opposite—mandatory arbitration clauses and forum-selection clauses are *not* mutually exclusive, but rather are complementary.") (emphasis original); B&Z Auto Enters., LLC v. Autotrader.com, Inc., No. 1:16-CV-2313-MHC, 2017 WL 7611519, at *8 (N.D. Ga. 2017) ("The forum selection clause in the [contract] can be understood as complementary to the agreement to arbitrate: the former merely requires [the plaintiff] to submit to Georgia's

courts."). In the face of all of this authority, Plaintiffs are unable to cite one case supporting their contention that the arbitration clause is inapplicable because of the forum selection clause in the Asset Transfer Agreement.

For all of the above reasons, the Court finds that the arbitration provision in the IC Agreement is applicable to Plaintiffs' claims in this case.[5]

## II. An Arbitrator Must Determine Whether Plaintiffs' Injunction Claim Should Go Through Arbitration

Plaintiffs next argue that even if the arbitration provision is generally applicable, it does not prevent them from pursuing their injunction claim in a court instead of via arbitration. (Doc. 18, pp. 14–15.) Thus, as an initial matter, Plaintiffs concede that if the IC Agreement's arbitration provision applies then their declaratory judgment and equitable estoppel claims fall within the scope of that provision and must be submitted to arbitration. However, in an effort to save their injunction claim, Plaintiffs rely on language in the arbitration provision which provides that it "does not limit either Party's right to pursue equitable remedies for a temporary restraining order or preliminary or permanent injunctive relief from a court of competent jurisdiction before, after, or during the pendency of any arbitration proceeding, including in aid of arbitration." (Doc. 1-2, p. 9.) Nationwide asserts that the arbitrator, not the Court, should decide whether this exception applies. (Doc. 22, pp. 9–10.)

---

[5] In their Response Brief, Plaintiffs argue that the forum selection clause in the Asset Transfer Agreement was "the product of overreaching." (Doc. 18, pp. 6–13.) However, Plaintiffs do not challenge the validity of the IC Agreement or specifically the arbitration clause within the IC Agreement. Because Plaintiffs do not challenge the validity of the arbitration clause itself, their claims about overreaching related to the Asset Transfer Agreement do not affect the Court's analysis. See Cross v. Carnes, 724 N.E.2d 828, 833 (Ohio Ct. App. 1998) ("When faced with broad arbitration clauses . . ., *courts are not permitted to consider allegations that the general agreement containing the arbitration provision is invalid*, and must instead limit their inquiries to allegations that the separate arbitration agreement within the general agreement is invalid.") (emphasis in original).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). However, "when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless." Henry Schein, Inc. v. Archer & White Sales, Inc., ––– U.S. –––, 139 S. Ct. 524, 529 (2019). The IC Agreement's arbitration provision states that "[t]he adjudication [of claims] will be by mandatory binding arbitration under the American Arbitration Association [(AAA)] Commercial Arbitration Rules and Mediation Procedures." (Doc. 1-2, p. 8.) It further provides that "[t]he enforceability of this Agreement, including this arbitration clause, will be resolved by the arbitrator." (Id. at p. 9.) Under Rule 7(a) of the AAA rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arb. Ass'n, Com. Rules, available at http://adr.org/sites/default/files/Commercial%20Rules.pdf (accessed August 13, 2021). The United States Court of Appeals for the Eleventh Circuit has "held that where the parties expressly incorporate the AAA rules into an arbitration provision, 'this alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.'" WasteCare Corp. v. Harmony Enters., Inc., 822 F. App'x 892, 895–96 (11th Cir. 2020) (per curiam) (quoting JPay, Inc. v. Kobel, 904 F.3d 923, 936 (11th Cir. 2018)).[6] The Eleventh Circuit went on to say that the presence of a "carve-out for equitable relief [in an arbitration provision] does not affect this analysis" because even though a party's claims may be "equitable ones, that 'confuses the question

---

[6] The arbitration provision at issue in WasteCare was held to have incorporated the AAA rules based on its language providing that controversies or claims between the parties "shall be settled by arbitration in accordance with the then current commercial rules of arbitration of the American Arbitration Association." 822 F. App'x at 894.

11

of who decides arbitrability with the separate question of who prevails on arbitrability.'" Id. at 896 (quoting Henry Schein, Inc., 139 S. Ct. at 531). Accordingly, based on the incorporation of the AAA rules into the IC Agreement's arbitration provision, it is clear that Plaintiffs and Nationwide agreed to delegate questions of arbitrability to an arbitrator.

Plaintiffs attempt to distinguish WasteCare Corp. by arguing that it dealt with an arbitration clause that had a "carve-out" for equitable relief while the arbitration provision in the IC agreement contains "an *exemption* from the entire arbitration process." (Doc. 18, p. 14 (emphasis original).) Plaintiffs cite no case law that distinguishes between a carve-out and an exemption when examining the arbitrability issue. Moreover, the analysis in WasteCare Corp. turns on the incorporation of the AAA rules into the arbitration provision (which Nationwide and Plaintiffs have done). Indeed, nothing in WasteCare Corp suggests that the use of the word "carve-out" was meant to mean something different from exemption. Ultimately, the flaw in Plaintiffs' assertion is that they are still making an argument concerning the arbitrability question, and the Supreme Court has held that this question must be submitted to an arbitrator when that power has been delegated (as it has been here), "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." Henry Schein, Inc., 139 S. Ct. at 529; see also Jones v. Waffle House, Inc., 866 F.3d 1257, 1270 (11th Cir. 2017) ("If the parties clearly and unmistakably intended to arbitrate *all* gateway issues, then *all* gateway issues—regardless of how frivolous the court may deem them to be—should be arbitrated.").

Based on the above, the Court finds that Plaintiffs' requests for a judgment declaring the Asset Transfer Agreement void and unenforceable and for equitable rescission of the Asset Transfer Agreement are subject to arbitration. In addition, the Court finds that an arbitrator should determine whether Plaintiffs' request for an injunction prohibiting Nationwide from enforcing the

Asset Transfer Agreement is subject to arbitration. Courts in this circuit typically stay cases when an arbitrator must determine the issue of arbitrability. See, e.g., Med X Change, Inc v. Enciris Techs. SAS, No. 8:20-cv-1223-T-33AAS, 2020 WL 6287682, at *4 (M.D. Fla. Oct. 27, 2020) ("[T]his case must be stayed pending the arbitrator's ruling on the preliminary issue of arbitrability.") Accordingly, the Court **GRANTS** Nationwide's Motion to Compel Arbitration. (Doc. 16.) However, the Court **DENIES** Nationwide's Motion to the extent it seeks to dismiss this action. (Id.)

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Nationwide Mutual Insurance Company's Motion to Compel Arbitration and Dismiss the Complaint. (Doc. 16.) The Court **ORDERS** the parties to submit the underlying dispute to arbitration. In addition, the Court **DIRECTS** the Clerk of Court to **STAY** and **ADMINISTRATIVELY CLOSE** this case until an arbitrator rules on whether Plaintiffs' request for an injunction prohibiting Nationwide from enforcing the Asset Transfer Agreement is subject to arbitration. The parties are **DIRECTED** to file a joint report on the status of the arbitration proceeding **SIXTY (60) DAYS** from the date of this Order, and every **SIXTY (60) DAYS** thereafter, and to immediately notify the Court upon the arbitrator's determination of the threshold issue of arbitrability.

**SO ORDERED**, this 20th day of August, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA