**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| R. MITCHELL BUSH, and R.M. BUSH & COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV420-219 |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## <u>ORDER</u>

Plaintiff R. Mitchell Bush, the principal and owner of Plaintiff R.M. Bush & Company, doc. 1 at 5, entered several agreements with Defendant Nationwide Mutual Insurance Company ("Nationwide"). *See generally* doc. 1-2; doc. 1-4. The "Independent Contractor Agent Agreement" ("IC Agreement") provides that that "[a]ny claim or dispute between [R.M. Bush & Company] and [Nationwide], will be adjudicated on an individual agent-by-agent basis, and not on a class or representative basis. The adjudication will be by mandatory binding arbitration under the American Arbitration Association ["AAA"] [Rules] [.]" Doc. 1-2 at 8. Section 17(G) of the IC Agreement provides that it

1

does not limit either Party's right to pursue equitable remedies for a temporary restraining order or preliminary or permanent injunctive relief from a court of competent jurisdiction before, after, or during the pendency of any arbitration proceeding, including in aid of arbitration.

Doc. 1-2 at 9 (hereinafter "Section 17(G)").  The arbitration provision also states that "[t]he enforceability of this [IC] Agreement, including this arbitration clause, will be resolved by the arbitrator." *Id.*

The parties also entered an "Asset Transfer Agreement" ("AT Agreement").  Doc. 1-4.  Plaintiffs allege that Nationwide obtained the AT Agreement "under duress with no valid consideration in pursuit of a scheme to allow Nationwide to obtain an unlawful or improper tax benefit."  Doc. 1 at 2.  They filed this putative class action suit against Nationwide seeking (1) a judgment declaring the AT Agreement to be void and unenforceable ("declaratory judgment request"), (2) equitable rescission of the AT Agreement ("recission request"), and (3) an injunction prohibiting Nationwide from enforcing the AT Agreement ("injunction request").  *Id.* at 4.

The District Judge granted, in part, and denied, in part, Nationwide's Motion to Compel Arbitration and Dismiss the Complaint, or, in the Alternative, to Transfer Venue.  Doc. 16 (Motion); doc. 38 at 13

(Order).   He found that the arbitration clause in the IC Agreement applies to the parties' dispute regarding the AT Agreement.  *See* doc. 38 at 10.   Given that applicability, he also found that the parties did not dispute that the declaratory judgment request and equitable recission request "must be submitted to arbitration."  *Id.*   Plaintiffs, however, argued that they could pursue their injunction request in federal court based on Section 17(G)'s provision that the IC Agreement "does not limit either Party's right to pursue equitable remedies for . . . injunctive relief from a court of competent jurisdiction[.]"  Doc. 1-2 at 9.   The District Judge found that since the parties agreed to delegate such "arbitrability" questions to an arbitrator, "an arbitrator should determine whether Plaintiff's [injunction request] is subject to arbitration."  Doc. 38 at 12-13.   He ordered the parties to "submit the underlying dispute to arbitration", and stayed and administratively closed this case "until an arbitrator rules on whether Plaintiffs' [injunction request] is subject to arbitration."  *Id.* at 13.  He directed the parties to file joint status reports updating the Court on the arbitration proceeding every 60 days, and to "immediately notify the Court upon the arbitrator's determination of the threshold issue of arbitrability."  *Id.*

3

The parties submitted five status reports updating the Court on the arbitration proceedings. Docs. 42, 43, 44, 50 & 51. Nationwide subsequently filed a motion explaining that the arbitration panel issued a ruling, and requesting "an order permanently sealing the ruling[.]" Doc. 54 at 1; *see also* doc. 54-2 (Nationwide filed the arbitration ruling as a sealed exhibit to its motion). Plaintiffs responded in opposition to the motion to seal, doc. 55, and Nationwide replied, doc. 57. Nationwide also attached a joint status report to its motion, which it does not seek to file under seal, in which all parties inform the Court that the arbitration panel issued a ruling, and "request a status conference to address how to set a case schedule given the procedural posture of the case." Doc. 54-1 at 1. Nationwide's motion to seal is ripe for disposition.

As the Eleventh Circuit has explained, "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (internal quotation marks omitted) (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978), and *Chi.*

*Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). "[A]nalyzing whether court documents should be sealed [under the common law standard] requires a two-step process. First, is the document a 'judicial record'? If it is, the court must then decide if the 'common law right of access may be overcome by a showing of good cause, which requires balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Havana Docks Corp. v. Carnival Corp.*, 2020 WL 12814851, at *1 (S.D. Fla. Nov. 12, 2020) (quoting *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1169 (11th Cir. 2019)).

"The Eleventh Circuit has held that the common law right of access applies *only* to judicial documents that are 'integral to judicial resolution of the merits.'" *Locke v. Warren*, --- F. Supp. 3d ---, 2020 WL 2763890, at *4 (S.D. Fla. Feb. 10, 2020) (emphasis in original) (quoting *Advance Loc. Media*, 918 F.3d at 1167-68); *see also Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1362 (11th Cir. 2021) ("[M]aterial filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." (quotations and citations omitted)). As the relevant case law makes clear, the Court must first

determine whether the arbitration panel's ruling is a judicial record subject to the presumption of public access.

Nationwide argues, *inter alia*, that the panel's ruling is not a "judicial record" subject to the presumption of public access because "neither party has sought confirmation of the arbitration ruling, nor requested any judicial action with respect to the arbitration proceedings. Instead, the Parties filed the arbitration ruling merely as an attachment to a status report[.]" Doc. 57 at 5-6; *see also id.* at 1, 4, 7.[1]  Plaintiffs counter that if the panel's ruling is sealed, "the public will not know why or on what terms and conditions the Court is now proceeding with [Plaintiffs'] injunction action." Doc. 55 at 9.

---

[1] The parties' briefing discusses whether the panel's ruling should be sealed under both (1) the common law right and (2) the "presumption of openness derived from the First Amendment". *See, e.g.*, doc. 55 at 2-4, 6-7; doc. 57 at 7-8. Courts have held that the First Amendment right, like the common law right, is only applicable to "judicial records." *See, e.g.*, *Brunckhorst v. Bischoff*, 2023 WL 1433573, at *1 (S.D.N.Y. Feb. 1, 2023) ("Under the First Amendment and the common law, the public has a presumption of access to judicial records. [Cit.] A judicial document or judicial record is a filed item that is relevant to the performance of the judicial function and useful in the judicial process." (quotations and citations omitted)); *Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, 2023 WL 1069744, at *1 (M.D.N.C. Jan. 27, 2023) (quoting *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013)) ("There is both a common law right and a First Amendment right of access to judicial records and documents, defined as documents that 'play a role in the adjudicative process, or adjudicate substantive rights.'"). Given the parallel "judicial record" definitions in both contexts, and since, as discussed below, the Court cannot conclude that the ruling is a "judicial record", the Court need not address the parties' First Amendment and common law arguments separately.

The Court cannot conclude that the panel's ruling is a "judicial record." As discussed, the District Judge decided that an arbitrator should determine whether Plaintiffs can pursue their injunction request in federal court in light of Section 17(G)'s provision that the IC Agreement "does not limit either Party's right to pursue equitable remedies for injunctive relief[.]" Doc. 38 at 10, 12-13. The parties subsequently notified the Court that the panel had issued a ruling, and "request[ed] a status conference to address how to set a case schedule given the procedural posture of this case." Doc. 54-1. That request indicates that no party disputes that Plaintiffs can proceed with their injunction request in federal court. Further, no party has used the panel's ruling to make an argument that the Court must take some action, e.g., allow or not allow Plaintiffs to pursue their injunction request in federal court. *See generally* docket; *see also Callahan*, 17 F.4th at 1363 ("What matters is how the document was used by the parties— to support an argument before the court—and not whether the court itself used the document to resolve that argument."). Since the Court cannot conclude that the panel's ruling is "integral to the judicial resolution of the merits," *Comm'r, Alabama Dep't of Corr.* 918 F.3d at

1167 (quotations and citation omitted), it is not a "judicial record" subject to the presumption of public access. *See In re Press Coal.'s Motion for Access to Cmty. Serv. Recs.*, 2022 WL 227090, at \*2 (D.D.C. Jan. 26, 2022) ("Because [certain records] have played no role in any adjudicatory function . . . they are not judicial records[.]" (quotations and citation omitted)).

Further, Plaintiffs do not argue that Nationwide's sealing request must be denied even if the panel's ruling is not a "judicial record." *See generally* doc. 55; *see also id.* at 9 ("Nationwide's Motion to Seal should be denied for each of two independent reasons. First, Nationwide has not addressed or rebutted the presumption of the openness derived from the First Amendment[.] . . . Second, Nationwide has not rebutted the presumption of openness derived from the common law[.]"). Accordingly, Nationwide's motion to seal[2] the arbitration ruling is **GRANTED**. Doc. 54. The Clerk is **DIRECTED** to maintain the filing under seal. Doc. 54-2. Additionally, the parties' joint request for a status conference is

---

[2] Nationwide titled its motion "Defendant's Motion to *Permanently* Seal Arbitration Ruling." Doc. 54 at 1 (emphasis added). To be clear, Nationwide's sealing request is granted because there is no indication on the current docket that the panel's ruling is presented to the Court in such a way that it is a "judicial record" subject to the presumption of public access. The Court makes no determination that the panel's ruling cannot be filed as a "judicial record" in some future context.

**GRANTED**.  Doc. 54-1.  The Court will set a conference by separate Order.  Finally, the Clerk is **DIRECTED** to redocket the parties' sixth status report, doc. 54-1, in a new and separate docket entry, maintaining the exhibit to that status report, doc. 54-2, **UNDER SEAL**.

**SO ORDERED**, this 8th day of February, 2023.

_Christopher L. Ray_

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA