IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

R. MITCHELL BUSH; and R. M. BUSH &
COMPANY d/b/a THE BUSH AGENCY,

      Plaintiffs,

      v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

      Defendant.

CIVIL ACTION NO.: 4:20-cv-219

## O R D E R

This matter is before the Court on Defendant Nationwide Mutual Insurance Company's Motion to Dismiss.  (Doc. 84.)  According to the Amended Complaint, Nationwide Mutual Insurance Company ("Nationwide") entered an agreement with Plaintiffs R. Mitchell Bush and R. M. Bush & Company d/b/a the Bush Agency and other Georgia insurance agents which dealt with the transfer of certain "policy assets" and resulted in falsified income reported on 1099 forms to the IRS.  (Doc. 79.)  Plaintiffs bring this putative class action suit against Nationwide alleging Nationwide filed fraudulent tax documents in violation of 26 U.S.C. § 7434 and seeking injunctive relief.  (Id.)  Nationwide has brought the at-issue Motion to Dismiss, arguing, among other things, that Plaintiffs' Section 7434 claim belongs in arbitration and Plaintiffs are contractually barred from bringing these claims against Nationwide.  (Doc. 84.)  The Motion has now been fully briefed.

(Docs. 84, 89, 93.)  For the reasons explained more fully below, the Court **DENIES** Defendant's Motion to Dismiss.[1]  (Doc. 84.)

## BACKGROUND

### I.   Plaintiffs' Relationship with Nationwide

The following are all the relevant allegations set forth in the Amended Complaint.  (Doc. 79.)  Bush is the principal and owner of R. M. Bush & Company d/b/a The Bush Agency ("the Bush Agency") and has been an insurance agent representing Nationwide for twenty-seven years. (Id. at p. 4.)  For many years, the Bush Agency operated "under an exclusive Nationwide contract," memorialized in the "Agency Agreement."  (Id. at pp. 4–5; see doc. 79-2.)  Under the Agency Agreement, the Bush Agency agreed to place new clients who were eligible for Nationwide insurance products exclusively with Nationwide in exchange for "major deferred compensation," which would be payable upon retirement or other cancellation of the contract.  (Doc. 79, pp. 1–2; see doc. 79-2, pp. 2, 4–6.)  The Agency Agreement provided it would be in force "until cancelled by either party" and that "the [Bush] Agency or Nationwide have the right to cancel this Agreement at any time with or without cause."  (Doc. 79-2, p. 3.)  The Agency Agreement also stated that, in the event of cancellation, Nationwide would retain the right to continue servicing the existing customers.  (Id.)

Unlike the exclusive agency relationship established in the Agency Agreement, agents operating under independent contracts with Nationwide were "free to represent multiple insurers and to place their clients who are eligible for Nationwide insurance products with Nationwide or with other carriers."  (Doc. 79, p. 2.)  In 2018, Nationwide announced that it intended to end all its

---

[1]  Because the Court is not swayed by any of the arguments raised in Plaintiffs' Request for Oral Argument on the Motion and does not believe oral argument would be beneficial in reaching its decision, the Court also **DENIES** Plaintiffs' Request.  (Doc. 96.)

exclusive agent contracts and replace them with independent agent contracts by July 1, 2020.  (Id.)

However, to make this transition to independent agency, Nationwide mandated that previously

exclusive agents now had to purchase the rights to represent existing clients on an independent

agency basis.  (Id.)  To carry out this transaction, Nationwide deducted this purchase price from

the deferred compensation package owed to former exclusive agents under the Agency Agreement.

(Id.)

In May 2020, Bush, on behalf of the Bush Agency, signed various agreements with

Nationwide to transition from operating as an exclusive agent to an independent agent, but noted

that each of his signatures were made "UNDER DURESS."  (Id. at p. 12; see docs. 79-1, 79-3, 79-

4.)  One of these agreements was the Independent Contractor Agent Agreement ("the IC

Agreement"), which established that the Bush Agency would begin operating as an independent

agent for Nationwide effective July 1, 2020.  (Doc. 79, p. 5; see doc. 79-1.)  Under the IC

Agreement, the Bush Agency is free to represent multiple insurers and to place Nationwide-

eligible clients with other insurance providers.  (Doc. 79, pp. 6–7.)  Just as under the previous

exclusive agency relationship, under the IC Agreement the agent is still compensated on a

commission basis, consisting of both new policy and renewal commissions, calculated as a

percentage of premiums generated.  (Id.)

The IC Agreement contains an arbitration provision which provides that "all controversies

and disputes between the parties [are] subject to mandatory binding arbitration."  (Doc. 79-1, pp.

7–8.)  The arbitration provision provides that

> any claim or dispute between Agent and Company, will be adjudicated on an
> individual agent-by-agent basis, and not on a class or representative basis.  The
> adjudication will be by mandatory binding arbitration under the American
> Arbitration Association Commercial Arbitration Rules and Mediation Procedures
> in effect on the date of the filing for arbitration.

(Id. at p. 7.)  Under this arbitration provision, the IC Agreement reads, in all capital letters and bold font, that

> THE PARTIES UNDERSTAND THAT THEY ARE GIVING UP THE RIGHT TO: (i) PARTICIPATE IN ANY CLASS ACTION OR CLASS ARBITRATION; (ii) PARTICIPATE IN ANY ACTION OR ARBITRATION PROCEEDING BROUGHT BY AN ASSOCIATION OF PERSONS OR ENTITIES ON A PARTY'S BEHALF AGAINST THE OTHER PARTY; AND (iii) HAVE ANY CLAIM OR DISPUTE BETWEEN THEM DECIDED BY A COURT OR JURY.

(Id.)  The IC Agreement also states that the arbitration provision

> does not limit either Party's right to pursue equitable remedies for a temporary restraining order or preliminary or permanent injunctive relief from a court of competent jurisdiction before, after, or during the pendency of any arbitration proceeding, including in aid of arbitration.  The exercise of any such remedy does not waive either Party's agreement to arbitrate.  The Parties intend that any dispute in any way relating to the Parties' contractual and business relationship must be pursued through arbitration such that there should be no disputes suitable for filing in a court of competent jurisdiction except as to the pursuit of equitable remedies described in this paragraph.

(Id. at p. 8.)  The IC Agreement's arbitration provision provides that "[t]he enforceability of this Agreement, including this arbitration clause, will be resolved by the arbitrator."  (Id.)

The next agreement that Bush executed on behalf of the Bush Agency was the Asset Transfer Agreement ("the ATA").  (Doc. 79-3.)  Under the ATA, Nationwide agreed to transfer its "right, title, and interest in, to, in connection with, and under [certain specified] assets, properties, and contractual rights" which included, among other things, the "Renewal Rights and Customer Data related to . . . Policies written by Nationwide . . . and being serviced by [the Bush Agency] and existing as of [July 1, 2020]."  (Id. at pp. 1–2.)[2]  The ATA provides that Nationwide has "the sole ownership of, and retain[s] the right, title and authority to sell the Transferred Assets

---

[2]  While the former exclusive agents had to purchase such renewal rights for their existing Nationwide customers, other independent agents—i.e., agents who were not previously engaged in an exclusive agency contract—did not have to purchase renewal rights to continue working with Nationwide.  (Doc. 79, p. 7–8.)

in any manner and at whatever price Nationwide so choose[s]," and states the fair market value of the transferred assets to the Bush Agency to be $145,176.00.  (Id. at p. 1.)  The ATA specifies "that [the Bush Agency] will receive a Form 1099 for the Transfer Value and agrees it will not take a position on any Tax Return before any Tax Authority or in any judicial proceeding that is in any way inconsistent with the Transfer Value."  (Id. at p. 12.)

## II.    Procedural Background

Plaintiffs initially filed suit on September 14, 2020, under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, seeking a declaratory judgment that the ATA is void and unenforceable, an injunction prohibiting Nationwide from enforcing the ATA, and equitable rescission of the ATA.  (Doc. 1, p. 18.)  In response, Nationwide moved to compel arbitration under the IC Agreement and to dismiss the complaint.  (Doc. 16.)  This Court then issued an Order, holding, among other things, that Plaintiffs' claim for declaratory relief was subject to arbitration under the IC Agreement's arbitration clause, because the parties agreed that "any dispute in any way relating to the Parties' contractual and business relationship must be pursued through arbitration."  (Doc. 38, pp. 7, 10.)  The Court also found that whether this Court could rule on Plaintiffs' claim for injunctive relief needed to be decided by an arbitrator and stayed the case pending the arbitrator's decision.  (Id. at p. 13.)  On August 23, 2022, the arbitration panel issued its order on the arbitrability issue.  (Doc. 63-1.)  The arbitration panel held that "the agreement clearly and unambiguously provides that either party may seek injunctive relief through judicial proceedings and that the request for injunctive relief addressed to the [C]ourt may occur before or during the arbitration of other issues."  (Id. at p. 1.)

Following the arbitration panel's order, Plaintiffs filed their Amended Complaint, now bringing a claim for civil damages under Section 7434 and seeking injunctive relief. [3] (Doc. 79.) In the Amended Complaint, Plaintiffs allege that the supposed "renewal right," which the Bush Agency purchased through the ATA, does not exist in fact, and the policyowner—i.e., the customer who purchases the policy—is the only person entitled to renew the policy or switch to another insurer.[4] (Id. at p. 7.) Accordingly, the Amended Complaint alleges that the purported transfer of assets was, in effect, meaningless, and it only served as a scheme to "confiscat[e] a substantial portion of the deferred compensation due under the exclusive contracts." (Id. at pp. 2, 7.) According to the Amended Complaint, this scheme resulted in "falsified income" which was reflected in fraudulent 1099-NEC forms issued by Nationwide. (Id. at p. 14.) Based on this theory, Plaintiffs seek civil damages under Section 7434 for the fraudulent 1099-NECs issued by Nationwide, a determination that the challenged provisions of the ATA are unenforceable, an order severing those provisions from the ATA, an injunction against the enforcement of the at-issue provisions, and a certification of the putative class pursuant to Federal Rule of Civil Procedure 23(b)(2). (Id. at p. 17.)

Nationwide then filed the at-issue Motion to Dismiss, in which it argues, among other things, that any non-injunctive claims are still subject to arbitration, that Plaintiffs failed to adequately plead a claim of tax fraud under Section 7434, that the Release in the ATA bars all

---

[3] While not specifically listed and alleged as a count in the Amended Complaint, Plaintiffs maintain that they are still pursuing a claim under the Declaratory Judgment Act. (See doc. 89, pp. 2–4.) Based on the Court's review of the Amended Complaint, the closest Plaintiffs come is asking, in the prayer for relief, for a "determin[ation] that the [at-issue] provisions of the ATA . . . are unenforceable." (Doc. 79, p. 17.)

[4] Plaintiffs contend that the ATA was "obtained under duress with no valid consideration in pursuit of a scheme to allow Nationwide to obtain an unlawful or improper tax benefit," and that Nationwide coerced Bush into signing the ATA by "threaten[ing] to take [his] clients and confiscate the remainder of his deferred compensation package." (Doc. 79, pp. 2, 11.)

claims against it, and that, regardless, Plaintiffs cannot prevail on a claim for injunctive relief. (Doc. 84.)  Nationwide alternatively argues that, at a minimum, Plaintiffs' class claims should be stricken because they are barred by the ATA's provision that disputes will be resolved on an agent-by-agent basis.  (Id. at pp. 19–26.)  Plaintiffs filed a Response, (doc. 89), and Nationwide filed a Reply, (doc. 93).

## DISCUSSION

### I.    Plaintiffs' Section 7434 Claim Belongs in Arbitration

Nationwide first moves to dismiss all of Plaintiffs' non-injunctive claims under the IC Agreement's arbitration clause.  (Doc. 84, pp. 7–8.)  In the original complaint, Plaintiffs brought two claims: one for a declaration that the challenged provisions of the ATA were void and unenforceable, and another for injunctive relief to prevent Nationwide from enforcing those provisions.  (Doc. 1, pp. 14–18.)  As mentioned above, the Court already found that the IC Agreement's arbitration clause applied to Plaintiffs' claims for declaratory relief, but the Court left the question of whether it could rule on injunctive relief to the arbitral panel.  (Doc. 38, pp. 6–10.) The arbitral panel found that "either party may seek injunctive relief through judicial proceedings and that the request for injunctive relief addressed to the court may occur before or during the arbitration of other issues."  (Doc. 63-1.)

In the Amended Complaint, however, Plaintiffs pursue a new theory of recovery, this time alleging tax fraud and demanding monetary damages under 26 U.S.C. § 7434.[5]  (Doc. 79, pp. 13–

---

[5]  If a plaintiff succeeds on his or her claim under Section 7434—that is, he or she proves that the defendant willfully filed a fraudulent information return with respect to payments purported to have been made to the plaintiff—the statute entitles the plaintiff to recover monetary damages in an "amount equal to the greater of $5,000 or the sum of[:] (1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees."  26 U.S.C. § 7434(b).

17.)  The Court finds that, for the same reason the arbitration clause applied to Plaintiffs' claim for declaratory relief, so too does it apply to Plaintiffs' claim under Section 7434.  (See doc. 38, pp. 6–10.)  As the Court held, the "arbitration provision indicates that it extends not only generally to Plaintiffs' and Nationwide's 'contractual relationship,' but also beyond that, to disputes that relate in any way to their entire 'business relationship.'"  (Doc. 38 at 7; see doc. 79-1, p. 8.)  Plaintiffs' new claim of tax fraud hinges on the validity of Nationwide's transmission of the challenged 1099-NECs, which was explicitly contemplated by and addressed in the ATA.  This dispute therefore stems from the parties' contractual and business relationships and fits squarely within the arbitration clause.  Accordingly, for the reasons stated in the Court's previous Order, the Court agrees with Nationwide and finds Plaintiffs' claim for monetary damages pursuant to 26 U.S.C. § 7434 is subject to the IC Agreement's arbitration provision.[6]

## II.   Plaintiffs' Request for Non-Monetary Relief

Having addressed the sole substantive cause of action that Plaintiffs clearly assert in their Amended Complaint, the Court turns to the requests for various types of relief other than the monetary damages provided under Section 7434.  (See doc. 79, pp. 15–17.)  In Section VI.B of the Amended Complaint, Plaintiffs purport to assert a cause of action for "injunctive relief" against Nationwide because, they claim, Nationwide is "[u]sing the [at-issue] contract provisions . . . [to] prohibit[] R.M. Bush . . . from providing accurate information to the IRS in response to misleading and inaccurate Form 1099-NECs issued by Nationwide during the period 2021–2022 and is compelling [Plaintiffs] to falsify income on their tax returns."  (Id. at p. 15.)  Plaintiffs urge that the at-issue provisions "were obtained under duress with no valid consideration in pursuit of a

---

[6]  Plaintiffs appear to concede that the Section 7434 claim is subject to arbitration, and they urge the Court to exercise some sort of supposed discretion to "*retain* the [Section] 7434 action as a necessary component of [their request for] permanent injunctive relief."  (Doc. 89, pp. 4–5 (emphasis added).)

scheme to allow Nationwide to obtain an unlawful or improper tax benefit," (id. at p. 2), and that, therefore, the Court should determine that the specified provisions of the ATA are unenforceable, sever the specified provisions of the ATA from the rest of the ATA, and enjoin the enforcement of those provisions, (id. at p. 17).

The underlying dispute and theory of recovery presented in the Amended Complaint are virtually identical to those presented in the original complaint, which the Court already found to be subject to arbitration.  (See doc. 1, p. 2; doc. 38.)  As their Amended Complaint makes clear, Plaintiffs recognize that, as a prerequisite to a permanent injunction, there must first be a determination that the at-issue provisions are unenforceable and subject to severance from the ATA.  The exception in the arbitration provision (allowing parties to seek certain remedies from a court), however, does not cover these prerequisite requests; it only permits parties to pursue "a temporary restraining order or preliminary or permanent injunctive relief from a court."[7]  (See doc. 79-1, p. 8.)  Thus, the non-injunctive requests for relief must be arbitrated.

At this time, the Court has no basis for enjoining the enforcement of the at-issue provisions. The Court sees no way for it to address the permanent injunction request without determining the merits of the underlying dispute.[8]  Ruling on the injunctive request would effectuate an end run around the arbitration provision, which the parties made clear (through the IC Agreement) they intended to remain broadly in effect even in the face of a request to a court for injunctive relief.

---

[7]  Plaintiffs have only requested a *permanent* injunction; they do not request a temporary restraining order or a preliminary injunction.  (See generally doc. 79.)

[8]  Indeed, in seeking dismissal of the injunctive relief request, Nationwide presented an in-depth argument that the ATA contains a release provision that Nationwide believes applies to Plaintiffs' request for injunctive relief.  (Doc. 84, pp. 16–19; doc. 93, pp. 3–5.)  To properly analyze these proposed grounds for dismissal, however, the Court would have to wade into the underlying merits of the claims, including the enforceability and applicability of various provisions in the at-issue contracts, improperly intruding on the province of the arbitrator's decision on the underlying dispute.

(Id. ("The exercise of [the right to pursue injunctive relief] does not waive either Party's agreement to arbitrate.")); see, e.g., Davis v. SEVA Beauty, LLC, No. 17-cv-547, 2017 U.S. Dist. LEXIS 148434, at *9 (W.D. Wash. Sept. 13, 2017) ("A party may not, however, circumvent the arbitration clause by simply seeking equitable remedies for claims that are squarely within the scope of matters to be arbitrated."); Navegar Network All., LLC v. Sutter East Bay Hosps., No. 17-cv-6368, 2017 WL 11745548, at *2 (E.D. La. Aug. 7, 2017) (the plaintiff asked court to order the defendant to pay money owed under an agreement, claiming the request was for preliminary injunctive relief and fell within the agreement's arbitration exception, the court held that the request was "not truly injunctive in nature [and] would require a full determination on the merits which would effectuate an end run around the arbitration provision"); Baldwin Tech. Co. v. Printers' Serv., Inc., No. 15-cv-7152, 2016 WL 354914, at *3, n.4 (S.D.N.Y. Jan. 27, 2016) ("where a contract has both a broad arbitration clause and a clause permitting the parties to seek injunctive relief before a court," the injunctive provisions are limited to parties seeking "injunctive relief in *aid* of arbitration, rather than transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed") (alterations adopted).  In other words, if the Court were to enjoin the enforcement of the at-issue provisions, it would, in effect, be declaring that the provisions are invalid, which, the Court has already found, can be done only through arbitration.[9]  (Doc. 38.)

The Court notes that the arbitration panel, in response to the Court's inquiry on this topic, has advised that a "request for injunctive relief addressed to the court may occur before or during the arbitration *of other issues*," (doc. 63-1 (emphasis added)), indicating that perhaps a court should

---

[9]  The Court notes—without deciding—that, even if the at-issue provisions are found unenforceable and are severed from the ATA, it is not clear that Plaintiffs would need or be entitled to any injunctive relief from the Court.  Nor does the Court intend to imply that Plaintiffs may only come to the Court for injunctive relief.  They are free to request such relief via arbitration, and it will be for an arbitrator to determine whether such relief is available and appropriate.

decline to adjudicate a request for injunctive relief where it would require a determination of the *same* issues that are to be decided through arbitration.  See, e.g., TravelClick, Inc. v. Open Hosp. Inc., No. 04CIV.1224(RJH)(KNF), 2004 WL 1687204, at *5 (S.D.N.Y. July 27, 2004) ("Plaintiff's complaint, whether or not it incorporates a prayer for preliminary injunctive relief, seeks a final and permanent resolution through the court system.  If [the plaintiff] were to prevail in this action, there would be no dispute left to arbitrate or otherwise resolve outside the court system.  The Court does not read the 'Equitable Relief' provision to allow such a broad circumvention of the agreement to arbitrate.").

**CONCLUSION**

In sum, the Court finds that Plaintiffs have not alleged facts entitling them to injunctive relief at this time. Unless and until an arbitration panel decides the underlying dispute in Plaintiffs' favor, the Court cannot properly address and adjudicate the request for injunctive relief. Accordingly, the Court **ORDERS** the parties to submit the underlying dispute (including, specifically, the claim pursuant to Section 7434) to arbitration and again **STAYS** and **ADMINISTRATIVELY CLOSES** this case until an arbitrator rules on whether the at-issue provisions of the ATA are unenforceable and/or should be severed from the remainder of the ATA. In light of the foregoing, the Court **DENIES** Defendant Nationwide Mutual Insurance Company's Motion to Dismiss or, in the Alternative, Motion to Strike.[10]   (Doc. 84.)   The parties are **DIRECTED** to file a joint report on the status of the arbitration proceeding **NINETY (90) DAYS** from the date of this Order, every **SIXTY (60) DAYS** thereafter, and within **TEN (10) DAYS** of completion of arbitration proceedings.

**SO ORDERED**, this 7th day of February, 2024.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[10]   This Motion is denied without prejudice and may be renewed—in whole or in part—at a later juncture if this case is re-opened following completion of arbitration.