IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| R. MITCHELL BUSH; and R. M. BUSH & COMPANY d/b/a THE BUSH AGENCY, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONWIDE MUTUAL INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION NO.: 4:20-cv-219 |

## O R D E R

This matter is before the Court on Defendant Nationwide Mutual Insurance Company's Motion to Confirm Arbitration Award. (Doc. 144.) Plaintiffs R. Mitchell Bush and R. M. Bush & Company d/b/a the Bush Agency brought this putative class action suit against Nationwide Mutual Insurance Company ("Nationwide") challenging certain agreements the parties had entered into. (Doc. 79.) The Court ordered the parties to submit the underlying dispute to arbitration. (Doc. 125.) Following several rulings by the arbitration panel (including a Final Award), Nationwide filed the Motion to Confirm Arbitration Award that is pending before the Court. (Doc. 144.) The Motion has now been fully briefed. (Docs. 144, 162 & 164.) For the reasons explained more fully below, the Court **GRANTS** Defendant Nationwide's Motion to Confirm Arbitration Award. (Doc. 144.)

## BACKGROUND

**I.   The Parties' Agreements**

According to the Amended Complaint, Bush is the principal and owner of R. M. Bush & Company d/b/a The Bush Agency (the "Bush Agency") and has been an insurance agent representing Nationwide for twenty-seven years.  (Doc. 79, p. 4.)  For many years, the Bush Agency operated "under an exclusive Nationwide contract," memorialized in the "Agency Agreement."  (Id. at pp. 4–5; see doc. 79-2.)  In May 2020, Bush, on behalf of the Bush Agency, signed various agreements with Nationwide to transition from operating as an exclusive agent to an independent agent.  (Doc. 79, p. 12; see docs. 79-1, 79-3 & 79-4.)  One of these agreements was the Independent Contractor Agent Agreement (the "IC Agreement"), which established that the Bush Agency would begin operating as an independent agent for Nationwide effective July 1, 2020.  (Doc. 79, p. 5; see doc. 79-1.)

The IC Agreement contains an arbitration provision which provides that "all controversies and disputes between the parties [are] subject to mandatory binding arbitration."  (Doc. 79-1, pp. 7–8.)  The arbitration provision provides that

> any claim or dispute between Agent and Company, will be adjudicated on an individual agent-by-agent basis, and not on a class or representative basis.  The adjudication will be by mandatory binding arbitration under the American Arbitration Association Commercial Arbitration Rules and Mediation Procedures in effect on the date of the filing for arbitration.  The place of arbitration will be Columbus, Ohio.

(Id. at p. 7.)  Paragraph 17.G of the IC Agreement states that the arbitration provision

> does not limit either Party's right to pursue equitable remedies for a temporary restraining order or preliminary or permanent injunctive relief from a court of competent jurisdiction before, after, or during the pendency of any arbitration proceeding, including in aid of arbitration.  The exercise of any such remedy does not waive either Party's agreement to arbitrate.  The Parties intend that any dispute in any way relating to the Parties' contractual and business relationship must be pursued through arbitration such that there should be no disputes suitable for filing

> in a court of competent jurisdiction except as to the pursuit of equitable remedies described in this paragraph. But, if a court determines that such claims exist, the claims may by brought only in a state or federal court in Columbus, Franklin County, Ohio, and Agent expressly and irrevocably consents to the personal jurisdiction and venue of such courts.

(Id. at p. 8.) This arbitration provision further provides that "[t]he enforceability of this Agreement, including this arbitration clause, will be resolved by the arbitrator," and that "[t]he Agreement is governed by the laws of Ohio and the Federal Arbitration Act, regardless of conflicts of law provisions requiring reference to the rules of, decisions in, or laws of another state or sovereign nation." (Id.)

The next agreement that Bush executed on behalf of the Bush Agency was the Asset Transfer Agreement (the "ATA"). (Doc. 79-3.) Under a section titled "Submission to Jurisdiction," the ATA provides:

> Each party irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or for recognition and enforcement of any judgment in respect hereof brought by the other Party or Parties . . . must be brought and determined exclusively in any Ohio state or federal court sitting in Columbus, Ohio.

(Id. at p. 21.) The parties agreed also that Ohio law governs "all disputes or controversies arising out of or relating to" the ATA. (Id. at p. 20.)

## II.     Procedural Background

Plaintiffs initially filed this suit on September 14, 2020, under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, seeking a declaratory judgment that the ATA is void and unenforceable, an injunction prohibiting Nationwide from enforcing the ATA, and equitable rescission of the ATA. (Doc. 1, p. 18.) In response, Nationwide moved to compel arbitration under the IC Agreement and to dismiss the complaint. (Doc. 16.) This Court then issued an Order, holding, among other things, that Plaintiffs' claim for declaratory relief was subject to arbitration under the IC Agreement's arbitration clause, because the parties agreed that "any dispute in any

3

way relating to the Parties' contractual and business relationship must be pursued through arbitration." (Doc. 38, pp. 7, 10.) The Court also found that whether this Court could rule on Plaintiffs' claim for injunctive relief needed to be decided by an arbitrator and it stayed the case pending the arbitrator's decision. (Id. at p. 13.) On August 23, 2022, the arbitration panel issued its order on the arbitrability issue. (Doc. 63-1.) The arbitration panel held that "the agreement clearly and unambiguously provides that either party may seek injunctive relief through judicial proceedings and that the request for injunctive relief addressed to the [C]ourt may occur before or during the arbitration of other issues." (Id. at p. 1.)

Following the arbitration panel's order, Plaintiffs filed their Amended Complaint in this Court, bringing a claim for civil damages under Section 7434 and continuing to seek injunctive relief. (Doc. 79.) Nationwide then filed a Motion to Dismiss or to Strike. (Doc. 84.) The Court found that "Plaintiffs [had] not alleged facts entitling them to injunctive relief at [that] time" and that, "[u]nless and until an arbitration panel decides the underlying dispute in Plaintiffs' favor, the Court cannot properly address and adjudicate the request for injunctive relief." (Doc. 125, p. 12.) The Court denied the Motion to Dismiss or to Strike, required the parties to submit their underlying dispute to arbitration, and stayed the case pending an arbitration ruling "on whether the at-issue provisions of the ATA are unenforceable and/or should be severed from the remainder of the ATA." (Id.)

The arbitration panel issued a "Partial Final Award" on October 4, 2024, granting Nationwide's Motion to Dismiss all claims and leaving open the issue of attorney's fees owed to Nationwide. (Doc. 144-1.) On January 31, 2025, the panel issued an Order awarding Nationwide $421,815.40 as reasonable attorney's fees and an additional $21,060.00 in costs. (Doc. 144-2.) On that same day, the panel issued a "Final Award," referencing the award of attorney's fees and

4

costs, making the "Partial Final Award" officially a "Final Award" and dismissing Plaintiffs' claims with prejudice. (Doc. 144-3.)

After the issuance of the Partial Final Award but before the Final Award, R. M. Bush filed a complaint and petition to vacate or modify the Partial Final Award in the United States District Court for the Southern District of Ohio. R. M. Bush & Co. v. Nationwide Mut. Ins. Co., No. 2:24-cv-4311-EAS-EPD, 2025 WL 1413394 (S.D. Ohio 2025) (the "Ohio case") (See doc. 143, p. 1.) Nationwide responded with a motion to dismiss or, in the alternative, to transfer. The Ohio court granted Nationwide's motion to dismiss and denied R. M. Bush's motion to vacate or modify arbitration award, concluding that, while the ATA's forum selection clause required "any motion to modify, vacate, or confirm an arbitration award resulting from an arbitration under the IC[Agreement], including R. M. Bush's Motion to Vacate or Modify, [to] be brought in and decided by a court in Columbus, Ohio," R. M. Bush had waived that forum selection clause by "voluntarily and intentionally [choosing] to file suit in Georgia, not Ohio," and by "litigat[ing] the matter for years in the Georgia court [and] opposing Nationwide's efforts to transfer the case to the Southern District of Ohio under the ATA." Id. at *3–7. The Ohio court also held that "ancillary arbitration litigation should be resolved in [the Southern District of Georgia] under the first-to-file rule." Id. at *3.

Nationwide filed the at-issue Motion to Confirm the Arbitration Award in this Court. (Doc. 144.) Plaintiffs filed a Response in opposition to the Motion to Confirm, (doc. 162), and Nationwide filed a Reply, (doc. 164).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") mandates that a district court "must grant" confirmation of an arbitration award unless it is "vacated, modified or corrected as prescribed in

sections 10 and 11 of this title." 9 U.S.C. § 9; see 9 U.S.C. §§ 10 (vacatur), 11 (modification or correction); see also Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 583 (2008) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."). "Because the FAA reflects a national policy in favor of arbitration agreements, there is a 'presumption under the FAA that arbitration awards will be confirmed.'" McLaurin v. Terminix Int'l Co., LP, 13 F.4th 1232, 1238 (11th Cir. 2021) (quoting Frazier v. CitiFinancial Corp., 604 F.3d 1313, 1321 (11th Cir. 2010)).

Federal courts have a limited role in reviewing awards and should defer to the decision of the arbitrator wherever possible, even if the court finds the arbitrator's legal analysis incorrect. See Gherardi v. Citigroup Global Markets Inc., 975 F.3d 1232, 1237 (11th Cir. 2020); Dorward v. Macy's Inc., 588 F. App'x 951, 953 (11th Cir. 2014); B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 909 (11th Cir. 2006); Gianelli Money Purchase Plan & Tr. v. ADM Inv. Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998). Accordingly, "judicial review of arbitration decisions is among the narrowest known to the law." AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007) (internal quotations omitted).

To confirm an arbitration award under the FAA, a party must move for confirmation in a court of competent jurisdiction. 9 U.S.C. § 9. The FAA, by itself, does not confer federal jurisdiction. Hall St., 552 U.S. at 581–82 ("As for jurisdiction over controversies touching arbitration, the Act . . . bestow[s] no federal jurisdiction . . . ."); PTA-FLA, Inc. v. ZTE USA, Inc., 844 F.3d 1299, 1305 (11th Cir. 2016) ("The [FAA] is 'something of an anomaly in the field of federal-court jurisdiction' because while it 'creates a body of federal substantive law . . . it does not create any independent federal-question jurisdiction.'") (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983)). Rather, there must be an independent

6

jurisdictional basis, such as federal question or diversity of citizenship.  Badgerow v. Walters, 596 U.S. 1, 4 (2022); Hall St., 552 U.S. at 582; Moses, 460 U.S. at 1, n.32.

Here, when Plaintiffs filed this case, they alleged that this Court was bestowed with "subject matter jurisdiction over [Plaintiffs'] federal declaratory judgment and injunction claims pursuant to 28 U.S.C. §§ 2201, 2202, and 1331," and that "[t]he Court has supplemental jurisdiction over [Plaintiffs'] equitable estoppel claim pursuant to 28 U.S.C. § 1367 . . . [and] pursuant to 28 U.S.C. § 1332, based on complete diversity."  (Doc. 1, pp. 5–6 (noting that "[a]lthough this action does not seek monetary damages, the amount in controversy exceeds $75,000").)  When they filed their Amended Complaint, Plaintiffs asserted that "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332" and that "[t]he amount in controversy exceeds $75,000."  (Doc. 79, p. 5.)  The parties have never disputed these bases of subject matter jurisdiction.  Because the parties are completely diverse and the amount in controversy (both in the Complaint and, for what it's worth, in the Motion to Confirm) exceeds $75,000, this Court is satisfied that it has (and has always had) diversity jurisdiction over the action.

## DISCUSSION

Nationwide contends that because Plaintiffs filed the case here and this Court granted Nationwide's Motion to Compel Arbitration (and did not dismiss this case when it did so), (doc. 125), the Court has retained jurisdiction to confirm the resulting arbitration award.  (Doc. 144, pp. 6–8 (citing PTA-FLA, 844 F.3d at 1305 ("It is by now undisputed that when a federal district court grants a motion to compel arbitration it retains jurisdiction to confirm or vacate the resulting arbitration award under 9 U.S.C. §§ 9–10.") (internal citations and quotations omitted); Gomez v. Allied Pros. Ins. Co., No. 1:19-CV-24994, 2023 WL 3979535, at *2 (S.D. Fla. May 26, 2023),

*report and recommendation adopted*, No. 19-CV-24994, 2023 WL 3971007 (S.D. Fla. June 13, 2023) ("[T]his Court retains jurisdiction to confirm the award even though the arbitration took place in another district as this Court has subject matter jurisdiction over the action and venue is proper.") (citing Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 706 (2d Cir. 1985) ("Once a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted.")); Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 200–04 (2000) (rejecting the notion that 9 U.S.C. § 9 mandates that a motion for confirmation of an award be brought in the district where the award was granted)).)

Plaintiffs do not argue that the Court lacks the power to confirm the arbitration award, nor do they try to establish grounds for vacatur or modification of the award. (See doc. 162.) Rather, Plaintiffs argue that the Southern District of Georgia is not the correct venue for confirming the Final Award, and they request that the Court deny the Motion to Confirm without prejudice, subject to refiling in a state or federal court in Columbus, Ohio. (Id. at p. 1.) Plaintiffs contend that "Nationwide's Motion to Confirm should have been filed in accordance with mandatory exclusive forum selection clauses in the [IC Agreement] and the [ATA], which require that actions not subject to arbitration be brought and determined exclusively in the state or federal courts in Columbus, Ohio." (Id.)

I.  **Overview of the IC Agreement and ATA's Forum Selection Clauses**

Plaintiffs argue that, "under the express exclusive venue provisions of the parties' two forum selection clauses, accompanied by the explicit waiver,[1] a state or federal court in Columbus,

---

[1] This "explicit waiver" referred to by Plaintiffs appears to simply be that the parties "*mutually* executed" the Agreements containing the forum selection clauses. (See doc. 162, p. 5.)

8

Ohio is the only permissible venue for Nationwide's Motion to Confirm and R. M. Bush's Motion to Vacate the arbitration award,[2] and both parties have explicitly waived the right to challenge that conclusion." (Id. at p. 5.) Nationwide, however, argues that the forum selection clauses do not apply to the Motion to Confirm. (Doc. 164, p. 4.)

As an initial matter, both the IC Agreement and the ATA provide that Ohio law governs the interpretation of each of those agreements. (Doc. 1-2, p. 9; doc. 1-4, p. 33.) "When considering a choice of law question, a federal court sitting in diversity is to apply the choice of law rules of the forum state, here Georgia." Mullins v. M.G.D. Graphics Sys. Grp., 867 F. Supp. 1578, 1580 (N.D. Ga. 1994). In Georgia, "[a]bsent a contrary public policy, [a] court will normally enforce a contractual choice of law clause." Carr v. Kupfer, 296 S.E.2d 560, 562 (Ga. 1982). Neither party has argued that the choice of law provisions are against public policy, so Ohio law applies. The Court has already held that, under Ohio law, the IC Agreement's arbitration provision is compatible with the ATA's "Submission to Jurisdiction" provision and applies to Plaintiffs' claims. (Doc. 38, p. 10).

Plaintiffs argue that Section 17.G. of the IC Agreement requires Nationwide to bring a motion to confirm in a court in Columbus, Ohio, as it provides that "claims not subject to arbitration must be filed in the state or federal courts in Columbus, Ohio." (Doc. 162, p. 3.) But Nationwide's Motion to Confirm is not a new "claim" distinct from the merits of the parties' dispute that the Court compelled to arbitration. The Motion is an ancillary proceeding regarding the arbitration that resolved all of Plaintiffs' merits-based claims. In addition, the Court agrees with the Ohio court's finding that, "insofar as a motion to vacate, modify, or confirm an arbitration

---

[2] To be clear, Plaintiffs have not moved to vacate with this Court.

award is 'an equitable remedy . . . in aid of arbitration,' as described in the [IC Agreement], the [IC Agreement] only requires that the Parties bring a motion to vacate, modify, or confirm an arbitration award in 'a court of competent jurisdiction.'" R. M. Bush, 2025 WL 1413394, at *5. The IC Agreement therefore does not *require* Nationwide to bring its motion to confirm in a state or federal court in Columbus, Ohio.

As for the ATA, Plaintiffs argue that its "Submission to Jurisdiction" provision "requires that post-arbitration motions to confirm or vacate arbitration awards be brought and determined in the state or federal courts of Columbus, Ohio." (Doc. 162, pp. 2–3.) The specific language in the ATA provides that "any legal action or proceeding arising out of or relating to [the ATA] . . . must be brought and determined exclusively in any Ohio state or federal court sitting in Columbus, Ohio." (Doc. 79-3, p. 20.) The Ohio court agreed with Plaintiffs' proffered interpretation and found that, pursuant to this provision, "any motion to modify, vacate, or confirm an arbitration award resulting from an arbitration under the [IC Agreement] . . . must be brought in and decided by a court in Columbus, Ohio." R. M. Bush, 2025 WL 1413394, at *6 (citing Cook v. Cmty. Health Partners, No. 13CA010520, 2015 WL 1291514, at *3 (Ohio 9th Dist. Ct. App. Mar. 23, 2015); Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC, 645 F.3d 522, 525 (2d Cir. 2011)). This Court, however, need not determine whether it agrees with this interpretation because, even if the ATA's forum selection clause applies to the present Motion to Confirm, the Court finds, for the reasons explained below, that Plaintiffs have waived their right to enforce that forum selection clause.

## II. Plaintiffs' Waiver of the ATA's Forum Selection Clause

Nationwide argues Plaintiffs waived their right to enforce the forum selection clause by filing this action in this Court and opposing Nationwide's October 2020 motion to transfer the case

to Ohio (in the event the claims were found non-arbitrable). (Doc. 164, pp. 7–10; see also doc. 16 (Motion to Compel Arbitration and Dismiss the Complaint, or, in the Alternative, to Transfer Venue).) Plaintiffs argue that they have waived no rights under the forum selection clause by filing the initial action in this Court because "Bush has been proceeding under the carve out in Paragraph 17.G [of the IC Agreement], pursuing permanent injunctive relief in a court of competent jurisdiction . . . ." (Doc. 162, pp. 5–6.)

The Court finds that, under Georgia, federal, *and* Ohio law, Plaintiffs waived their right to enforce the ATA's forum selection clause against Nationwide. Waiver is the voluntary relinquishment or abandonment of a known right. See Smith v. Gordon, 598 S.E.2d 92, 93–94 (Ga. Ct. App. 2004) ("[A]ll the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist.") (internal quotations omitted); United States v. Olano, 507 U.S. 725, 733 (1993) ("[W]aiver is the 'intentional relinquishment or abandonment of a known right.'") (internal quotations omitted); Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347 (11th Cir. 1994) ("Waiver is the voluntary, intentional relinquishment of a known right.") (internal quotations omitted); Bldg. Servs. Inst. v. Kirk Williams Servs. Co., No. 07AP-686, 2008 WL 747657, at *2 (Ohio 10th Dist. Ct. App. Mar. 20, 2008) ("'Waiver' is a voluntary relinquishment of a known right.") (internal quotations omitted). Plaintiffs were presumptively aware of the ATA forum selection clause. See Swyters v. Motorola Emps. Credit Union, 535 S.E.2d 508, 510 (Ga. Ct. App. 2000) ("[P]arties to a contract are presumed to have read their provisions and to have understood the contents.") (internal citations omitted); Preferred Cap., Inc. v. Power Eng'g Grp., Inc., 860 N.E.2d 741, 745 (Ohio 2007) ("[P]arties to contracts are presumed to have read and understood them."). Plaintiffs also expressly attested to having read and understood the ATA when executing it. (Doc. 1-4, p. 8 ("[Plaintiffs] represent and warrant

11

that [Plaintiffs] have carefully read [the ATA] . . . and freely and voluntarily agreed to all the terms and conditions hereunder . . . .").) Nonetheless, they voluntarily and intentionally chose to sue in this Court. Furthermore, the provision was brought to their attention through Nationwide's motion to transfer shortly after this case was filed, yet they explicitly opposed transfer and claimed the case was properly before this Court. (Doc. 16.)

Plaintiffs rely on a so-called "carve out" in Paragraph 17.G of the IC Agreement to attempt to explain why, by filing the case here, they did not violate or waive the forum selection clause. The specified "carve out" states that the arbitration provision "does not limit either Party's right to pursue equitable remedies for a temporary restraining order or preliminary or permanent injunctive relief from a court of competent jurisdiction before, after, or during the pendency of any arbitration proceeding, including in aid of arbitration." (Doc. 79-1, p. 8.) Plaintiffs argue that Bush properly filed suit in this Court under the "carve out" because he was pursuing permanent injunctive remedies in "a court of competent jurisdiction." (Doc. 162, pp. 6–11.) However, as Nationwide argues, the original Complaint Plaintiffs filed in this Court contained claims other than the demand for injunctive relief. (See doc. 1, pp. 14–18; doc. 164, p. 9.) Plaintiffs previously conceded that if the IC Agreement's arbitration provision applied then their declaratory judgment and equitable estoppel claims fell within the scope of that provision and had to be submitted to arbitration. (Doc. 18, pp. 14–15.) Yet Plaintiffs have continued to litigate their claims in this Court for years, disregarding the ATA forum selection clause that they now seek to enforce.

"A waiver may be express, or may be inferred from actions, conduct, or a course of dealing." Smith v. Gordon, 598 S.E.2d 92, 93–94 (Ga. Ct. App. 2004). A court determines whether a party has waived a contractual right by "focus[ing] on the actions of the person who held the right." Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022). Waiver of a contractual

right is effective even absent a showing of prejudice to the other party. Id. In light of all the foregoing, the Court finds that, under Georgia, federal, *and* Ohio law, Plaintiffs waived their right to enforce the forum selection clause in response to Nationwide's Motion to Confirm.

### III.     Applicability of the First-to-File Rule

Finally, the first-to-file rule underscores this Court's authority to decide Nationwide's Motion to Confirm. "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 78 (11th Cir. 2013). Thus, "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." Id. (internal quotations omitted.) Here, Plaintiffs filed their substantive claims with this Court, which found that the claims were subject to mandatory arbitration and then stayed—but did not dismiss—the case while arbitration occurred. Nationwide has filed its Motion to Confirm the arbitration award within this "first-filed" action. R. M. Bush initiated the second action by filing, in the Ohio district court, a complaint and motion to vacate or modify the arbitration panel's award.

Citing the first-to-file rule, Nationwide argues that, "as the forum 'initially seized of the controversy,' this [C]ourt is also the most ***appropriate*** forum to adjudicate any post-arbitration motions to confirm or vacate." (Doc. 164, p. 10 (citing S. Mills, Inc. v. Nunes, 586 F. App'x 702, 705 (11th Cir. 2014)).) Plaintiffs, on the other hand, argue that "Nationwide cannot establish the fundamental criteria necessary to call the first-to-file rule into play because Nationwide cannot identify a single material overlap between issues raised in the Motion to Confirm and the only

matter pending in this Court, a request for injunctive relief that is essentially moot unless the arbitration award is vacated or modified." (Doc. 162, p. 8.)

The Ohio court, in dismissing R. M. Bush's case, considered the "first-to-file" rule and found that "the nature of the claims [presented to this Court] and the dispute are essentially identical," and that, under the first-to-file rule, this Court "has the jurisdiction to resolve ancillary arbitration proceedings." R. M. Bush, 2025 WL 1413394, at *7–8. The Ohio court also explained that "[a]llowing resolution of the Parties' competing motions to proceed before the Georgia court advances principles of comity, fairness, and judicial efficiency." Id. The Court agrees. Considering that Plaintiffs originally chose to sue in this Court, that they have remained active in the litigation of the underlying claims in this Court, that they opposed Nationwide's efforts to transfer this case to the Southern District of Ohio under the ATA, and that this Court stayed this case when it compelled arbitration of the underlying claims, this Court has retained jurisdiction and therefore has the authority to decide the Motion to Confirm the Final Award.

IV.     **Confirmation of the Final Award**

No valid grounds for vacatur or modification of the arbitration award exist under 9 U.S.C. §§ 10, 11 (nor have any been suggested by Plaintiffs). Any attempt to vacate or modify an award must occur within ninety days of the rendering of the award. 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). As discussed, R. M. Bush timely filed a complaint and motion to vacate or modify the award in Ohio; however, the Ohio court denied the motion, holding that *this* Court "has the jurisdiction to resolve ancillary arbitration proceedings." R. M. Bush, 2025 WL 1413394, at *8. Plaintiffs have not timely sought to vacate or modify the Final Award in this Court. They have thus waived their ability to potentially have the award

vacated or modified.  See Cullen v. Paine, Webber, Jackson & Curtis, Inc., 863 F.2d 851, 854 (11th Cir. 1989) ("[T]he failure of a party to move to vacate an arbitral award within the three-month limitations period prescribed by section 12 of the [FAA] bars [that party] from raising the alleged invalidity of the award as a defense in opposition to a motion brought under section 9 of the [FAA] to confirm the award."); McLaurin, 13 F.4th 1232.  Because nothing supports vacating this award, the Court confirms the Final Award.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant Nationwide Mutual Insurance Company's Motion to Confirm Arbitration Award.[3]  (Doc. 144.)  The Court **DIRECTS** the Clerk of Court to enter judgment in Defendant's favor and **CLOSE** this case.

**SO ORDERED**, this 19th day of September, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] If Plaintiffs may contend that their claim for injunctive relief is still pending, such claim and request for relief is **DENIED** and **DISMISSED as moot** in light of the arbitration panel's dismissal, with prejudice, of all of Plaintiffs' underlying claims.